OPINION
{¶ 1} This case is before us on the appeal of Richard McNutt (Richard) from a trial court decision on modification of spousal support. In a singe assignment of error, Richard contends that "[t]he trial court abused its discretion when it failed to suspend the Defendant-Appellant's spousal support obligation and, instead, imposed an obligation in the amount of $300 per month on the Appellant."
 {¶ 2} Richard and his ex-wife, Cheryl, were divorced in 2002, after about thirty-four years of marriage. The divorce decree ordered Richard to pay Cheryl $1,800 per month in spousal support indefinitely. Spousal support was to terminate upon either party's death or upon Cheryl's remarriage. Cheryl's cohabitation with a non-relative male was also a basis for modification, including but not limited to termination of support. In the decree, the court was given continuing jurisdiction over the amount of spousal support, but not the duration.
 {¶ 3} According to the decree, the amount of spousal support was based on Richard's gross annual income of $99,000, and Cheryl's gross annual income of $32,000. The decree itself resulted from the parties' agreement to various items, including spousal support, on the record at their final divorce hearing on April 19, 2002. Another area of agreement was the equal division of Richard's pension when he retired. At the time of the agreement, Richard was employed at Delphi Automotive Systems.
 {¶ 4} Subsequently, on April 11, 2003, Richard filed a motion to modify spousal support. The motion was based on the fact that Richard had been given a fourteen-month severance package from Delphi that was scheduled to end in the near future. At that point, Richard would retire from Delphi, and his income would be reduced by about $55,000 per year. When Richard retired, Cheryl would receive about $1,500 per month of his income as her share of the retirement benefits.
 {¶ 5} After several continuances, the matter was heard before a magistrate on January 8, 2004. At the hearing, Richard testified that he had retired on August 1, 2003, after working thirty-seven years at Delphi. Richard indicated that the plant where he worked had been closed, and that he was pressured to retire. Delphi offered an incentive to retire, but told employees that if they chose not to retire, the company would place them on retirement anyway. Faced with these facts, Richard accepted the retirement incentive. He testified that he was also scheduled for carpal tunnel surgery a few weeks after the support hearing.
 {¶ 6} The gross amount of Richard's retirement benefit was about $2,980.67, and each party would, therefore, receive about $17,880 in income from the pension per year. Cheryl was also employed full-time, making $13 per hour, and had received gross income of about $29,000 in 2003. Consequently, before award of any support, Cheryl's income would be at least $44,840 per year (based on a 40 hour work week). In contrast, Richard's income would be $17,880 per year.
 {¶ 7} After reviewing the facts, the magistrate found a change in circumstances based on Richard's involuntary decrease in income, as well as Cheryl's receipt of retirement income. The magistrate then found that Richard's spousal support obligation should be reduced to $300 per month, effective September 1, 2003. The magistrate also addressed some other matters, including a tax arrearage and contempt motions the parties had filed against each other.
 {¶ 8} Following the decision, both sides filed objections, which the trial court overruled in part and sustained in part. The only matter pertinent to this appeal is the decision that spousal support should be reduced from $1,800 per month to $300 per month. In this regard, Richard claims that the trial court abused its discretion by failing to eliminate spousal support altogether. According to Richard, the decision is not supported by a sound reasoning process since his income will now only be about $14,284 per year, or nearly at poverty level. In contrast, with the spousal support, Cheryl will have about $50,484 in income per year.
 {¶ 9} A trial court has broad discretion in deciding whether to modify spousal support awards. "The crucial issue is to set a support award that is reasonable and appropriate." McHenry v. McHenry, Montgomery App. No. 20345, 2004-Ohio-4047, at ¶ 21. Support orders are reviewed for abuse of discretion, meaning that before we can reverse, we must find that the trial court's decision is "unreasonable, arbitrary or unconscionable."Graham v. Graham (1994), 98 Ohio App.3d 396, 399, 648 N.E.2d 850
(citation omitted). In making this assessment, we look at the totality of the circumstances. Carnahan v. Carnahan (1997), 118 Ohio App.3d 393,399, 692 N.E.2d 1086.
 {¶ 10} "Deciding a motion for modification of a spousal support award involves a two-step determination. First, the trial court must find that a change in circumstances exists. The change in circumstances must be substantial, and must not have been contemplated at the time of the prior order. * * * Once the trial court is satisfied that a change in circumstances exists, the next step is a re-examination of the existing order in light of the changed circumstances. The trial court must consider whether spousal support is still necessary and, if so, in what amount. In determining whether the existing order should be modified, the trial court is guided and limited by the consideration of all relevant factors, specifically those listed in R.C. 3105.18(C)." Seagraves v.Seagraves (Apr. 19, 1996), Montgomery App. No. 15588, 1996 WL 185332, *5 (citation omitted).
 {¶ 11} In the present case, there is no dispute about the fact that the decrease in Richard's income was a change in circumstances warranting modification of the existing order. What is disputed is whether spousal support is still appropriate and, if so, in what amount.
 {¶ 12} Although R.C. 3105.18 focuses on what is appropriate and reasonable rather than need, "the needs of the requesting party and the ability of the opposing party to pay it remain important considerations."Brown v. Brown, Pike App. No. 02CA689, 2003-Ohio-304, at ¶ 13. AccordHowell v. Howell, Clark App. No. 2002-CA-60, 2003-Ohio-4842, at ¶ 25.
 {¶ 13} As a starting point, we note that $1,800 per month was deemed an appropriate and reasonable amount of spousal support at the time of the original support order. The evidence at the hearing indicates that nothing has changed in Cheryl's financial situation, except her monthly receipt of $1,500 in pension money. Therefore, Cheryl's financial need is about $300 per month, or the amount of support the trial court awarded.
 {¶ 14} In considering Richard's obligations, we find that he will not be reduced to living at near poverty level if he pays $300 per month in spousal support. Although Richard was scheduled to have surgery shortly after the support hearing, there was no indication that he would be disabled long-term from employment. Furthermore, while Richard was retired from his prior job, he was still quite young (age 55 at the time of the hearing). Therefore, if Richard requires extra income, he can find a job.
 {¶ 15} More important, however, is the fact that Richard has remarried and shares expenses with his current wife. Richard indicated at the hearing that he purchased a home after the divorce that is solely in his name, and that he currently pays about one-third of the household expenses. The trial court correctly observed that a new spouse's income is not considered in determining an obligor's ability to pay. See, e.g.,Carnahan, 118 Ohio App.3d at 401. Nonetheless, a court can appropriately consider the fact that an individual benefits from sharing living expenses with another person. This factor is specifically mentioned in R.C. 3119.22(H), in the context of child support. The benefit of sharing expenses is not among the particular factors listed in the spousal support statute. However, R.C. 3105.18(C)(1)(n) allows consideration of "[a]ny other factor that the court expressly finds to be relevant and equitable." We believe the ability to share expenses is relevant in deciding whether an obligor's claim of poverty is well-taken. Compare Howell, 2003-Ohio-4842, at ¶ 26 (noting in the context of a spousal support award that the obligee would likely incur greater living expenses, since the parties' minor child lived with her and the obligor shared living expenses with his girlfriend).
 {¶ 16} Richard testified that he has remarried and that his current wife works full-time, at a pay rate of $17 or $18 per hour, which amounts to between $35,360 and $37,440 per year. Because the income in Richard's household will be around $49,644 to $51,724 per year (even if Richard chooses not to work), we could not reasonably find that paying support will require Richard to live at or near the poverty level.
 {¶ 17} Based on the preceding discussion, the trial court did not abuse its discretion in modifying the spousal support award to $300 per month. Accordingly, the single assignment of error is overruled, and the judgment of the trial court is affirmed.
Wolff, J., and Donovan, J., concur.