[Cite as *Jones v. Jones*, 2013-Ohio-3660.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| HEATHER JONES | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2013 AP 04 0018 |
| | : | |
| CARL JONES | : | |
| | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Tuscarawas County
Court of Common Pleas, Case No.
2011TC 02 0053

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      August 15, 2013

APPEARANCES:

For Plaintiff-Appellant:      For Defendant-Appellee:

DAN GUINN      RICHARD FOX
118 W. High Ave.      122 S. Wooster Ave.
New Philadelphia, OH 44663      Strasburg, OH 44680

*Delaney, J.*

{¶1}   Plaintiff-Appellant Heather Jones appeals the March 26, 2013 judgment entry of the Tuscarawas County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

{¶2}   Plaintiff-Appellant Heather Jones and Defendant-Appellee Carl Jones were married on July 18, 1992.  Four children were born as issue of the marriage: K.J. born November 17, 1994; D.J. born May 12, 1998; P.J. born January 5, 2002; and E.J.D. (age of majority at the time of divorce).

{¶3}   Wife and Husband originally resided in Kimball, Michigan.  The extended family of Husband and Wife live in Michigan.  Wife and Husband were both employed in Michigan, but Husband lost his job in 2008.  At the time, Husband was earning $87,000.  Wife started working outside of the home in 2006.  At her job in Michigan, Wife was earning $60,000.  Wife found new employment in Ohio in 2009 where she was hired as a human resources manager at Graphics Packaging in Tuscarawas County, Ohio.  In 2012, Wife was on track to earn $90,000 per year.  Wife moved to Ohio, Husband stayed in Michigan with the children from May to August 2009, and then they moved to Ohio to be with Wife.

{¶4}   Husband could not find employment in his field of mechanical engineering and took a job with Case Farms as a general laborer in June 2010.  He earned $6.80 per hour.

{¶5}   During the marriage, Husband and Wife entered into a debt consolidation loan.  The loan was to pay off credit card debt for credit cards issued in Husband's name, but allegedly, due to Wife's spending.

{¶6} In December 2010, Husband and Wife separated. Wife obtained a civil protection order against Husband on January 7, 2011. The three minor children remained with Wife. In 2011, Wife began a romantic relationship with a coworker at Graphics Packaging.

{¶7} In May 2011, Husband found employment in Michigan as a mechanical engineer where he was on track to earn $80,000 per year in 2012. Husband moved back to Michigan and resided in the marital home located in Kimball, Michigan. Husband's and Wife's adult daughter and her husband reside in the marital home with Husband.

{¶8} On February 9, 2011, Wife filed a complaint for divorce in the Tuscarawas County Court of Common Pleas. The magistrate held an in camera interview with the minor children on September 21, 2011. No record exists of the interview. Husband filed a proposed shared parenting plan naming Husband as the primary residential parent and legal custodian to D.J. and P.J. and Wife primary residential parent and legal custodian of K.J.

{¶9} A trial before the magistrate was held on March 14, 2012.

{¶10} On March 30, 2012, Husband placed flyers on the windshields of vehicles parked in the parking lot of Wife's place of employment. The flyers had photos of Wife and her boyfriend alleging their relationship destroyed families. The magistrate convened a hearing and admonished Husband.

{¶11} On June 12, 2012, the magistrate filed her decision. The parties filed objections to the magistrate's decision. Upon consideration of the parties' objections, the trial court rejected the magistrate's decision because it found the findings of fact and

conclusions of law were insufficient to conduct a proper review. The trial court remanded the matter to the magistrate.

{¶12} On January 31, 2013, the magistrate issued her decision. Relevant to this appeal, the magistrate denied both parties' requests for spousal support; awarded Husband $6,732.70 from Wife's 401(K) plan; awarded Husband certain personal property in possession of Wife; made Wife responsible for the debt consolidation loan; and adopted Husband's shared parenting plan naming Husband as the primary residential parent. The parties filed objections to the magistrate's decision. The trial court overruled the objections and adopted the recommendations of the magistrate's decision on March 26, 2013. It is from this decision Wife now appeals.

## ASSIGNMENTS OF ERROR

{¶13} Wife raises six Assignments of Error:

{¶14} "I. THE COURT ABUSED ITS DISCRETION IN FAILING TO AWARD SPOUSAL SUPPORT TO WIFE.

{¶15} "II. THE COURT ERRED IN AWARDING THE AMOUNT OF $6,732.70 TO THE HUSBAND FROM THE WIFE'S RETIREMENT.

{¶16} "III. THE COURT ERRED IN AWARDING PERSONAL PROPERTY THAT WAS IN THE WIFE'S POSSESSION SINCE THE PARTIES SEPARATION TO THE HUSBAND.

{¶17} "IV. THE COURT ABUSED ITS DISCRETION IN AWARDING ATTORNEY FEES TO BE PAID BY THE WIFE TO THE HUSBAND'S ATTORNEY.

{¶18} "V. THE COURT ERRED IN ORDERING THE WIFE TO BE SOLELY RESPONSIBLE FOR THE PARTIES' DEBT CONSOLIDATION.

{¶19} "VI. THE COURT ABUSED ITS DISCRETION IN ADOPTING THE SHARED PARENTING PLAN OF THE FATHER, THUS NAMING HIM THE PRIMARY RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE PARTIES' MINOR CHILDREN."

**ANALYSIS**

*I. SPOUSAL SUPPORT*

{¶20} Wife argues in her first Assignment of Error that the trial court abused its discretion in denying Wife spousal support. We disagree.

{¶21} A trial court's decision concerning spousal support may be altered only if it constitutes an abuse of discretion. *Kunkle v. Kunkle,* 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). R.C. 3105.18(C)(1)(a) through (n) sets forth the factors a trial court is to consider in determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, terms of payment, and duration of spousal support:

(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶22} Trial courts must consider all the factors listed in R.C. 3105.18(C). However, this court has previously held that a trial court need not acknowledge all evidence relative to each and every factor listed in R.C. 3105.18(C), and we may not assume that the evidence was not considered. *Hutta v. Hutta,* 177 Ohio App.3d 414, 2008-Ohio-3756, 894 N.E.2d 1282, ¶ 27 (5th Dist.), citing *Clendening v. Clendening,* 5th Dist. Stark No. 2005CA00086, 2005-Ohio-6298, ¶ 16, citing *Barron v. Barron,* 5th Dist. Stark No. 2002CA00239, 2003-Ohio-649. The trial court need set forth only sufficient detail to enable a reviewing court to determine the appropriateness of the award. *Id.*, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988).

{¶23} The parties in this case were married for twenty-one years. During the marriage, Wife worked in the home, but returned to the outside work force as a full-time employee in 2006. In 2009, Wife was employed as a human resources manager with Graphics Packaging. In 2010, Wife earned $79,375.80. In 2011, Wife earned $83,571.08. In 2012, Wife was on track to earn $90,000.00.

{¶24} Husband was employed full time until 2008 when he lost his job. At the time, he was earning $87,000.00 per year. Husband was unemployed from 2008 to June 2010, when he became employed at Case Farms as a general laborer. During his unemployment, the parties used Husband's retirement benefits to supplement the household's income. In 2010, Husband earned $18,100.27. He became employed in Michigan as a mechanical engineer and was on track in 2012 to earn $80,000.00.

{¶25} No evidence was presented during the March 14, 2012 hearing as to the parties' ages or any limitations on their ability to work based on education or physical condition.

{¶26} Wife argues that because of the long-term marriage and the asset and debt distribution ordered by the trial court, Wife is entitled to spousal support. Based upon the record and our further analysis of the remaining Assignments of Error as to the distribution of debt, we find no abuse of discretion in denying Wife's request for spousal support and not retaining jurisdiction over the issue of spousal support.

{¶27} Wife's first Assignment of Error is overruled.

## II. DIVISION OF INVESTMENT ACCOUNTS

{¶28} Wife argues in her second Assignment of Error, the trial court abused its discretion when it ordered Wife to pay Husband $6,732.70 from Wife's IRA. The magistrate outlined the parties' investment accounts in the findings of facts: (1) Wife had a 401(K) through Fidelity Investments for $21,368.80; (2) Husband had an IRA with Principal Life Insurance for $7,391.42; (3) Husband had a flexible premium adjustable life insurance policy valued at $511.97; and (4) Wife's bank account balance was $2,548.12 and Husband's bank account balance was $300.00. There was no dispute of fact that Husband and Wife depleted Husband's retirement account during his unemployment to fund the families' living expenses.

{¶29} The trial court equally divided the 401(K), IRA, and life insurance cash value between Husband and Wife. In order to accomplish an equal division, the trial court found Husband should receive $6,732.70 of Wife's 401(K) via a QDRO.

{¶30} R.C. 3105.171(B) requires the trial court to determine what constitutes marital property and what constitutes separate property. "In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses * * *." R.C. 3105.171(B).  The Revised Code further requires that a trial court divide the marital property equally unless an equal division would be inequitable, in which case "the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(C)(1).  The court may make a distributive award to facilitate, effectuate, or supplement a division of marital property. R.C. 3105.171(E)(1).

{¶31} Trial courts have "broad discretion to determine what property division is equitable in a divorce proceeding." *Cherry v. Cherry*, 66 Ohio St.2d 348, 421, 421 N.E.2d 1293 (1981), paragraph two of the syllabus. A trial court's decision allocating marital property and debt will not be reversed absent an abuse of discretion. "Abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶32}  There is no dispute in this case that the investment accounts are marital, not separate, property.  The trial court divided the investment accounts equitably.  In order to accomplish the division of the marital property, the trial court made a distributive award.  We find no abuse of discretion in the division or distributive award.

{¶33} Wife's second Assignment of Error is overruled.

### III. PERSONAL PROPERTY DIVISION

{¶34} Wife contends in her third Assignment of Error the trial court erred when it awarded Husband the personal property listed in Husband's Exhibit W.  At trial, Husband introduced Exhibit W.  The first page of Exhibit W lists eleven pieces of property in Wife's possession that Husband requested from Wife: queen bed frame with mattress, seven drawer dresser with mirror, Gateway desk top computer with monitor, Epson printer, computer desk, one twin bed set from bunk bed set, daybed with mattress, five drawer dresser, dining table with six chairs, Dyson vacuum cleaner, and weed trimmer.  The second page of Exhibit W is a complete list of the marital property. The trial court ordered that Husband receive the items of personal property listed on Husband's Exhibit W.  Husband states in his appellate brief that the property division consists of the first page of Exhibit W.

{¶35} Wife argues that since the parties' separation, Wife has been in possession of the property listed in Exhibit W.  Husband resides in Michigan in a fully furnished home and does not require the property items listed in Exhibit W.

{¶36} R.C. 3105.171(C) mandates an equal division of marital property unless such would be inequitable under the circumstances.  A trial court enjoys broad discretion in fashioning an equitable division of marital property.  *Blakemore,* 5 Ohio St.3d at 218.  In dividing marital assets and in deciding whether to order an unequal award, a trial court must consider all relevant factors, including those listed in R.C. 3105.171(F).  However, the Supreme Court has directed that the appellate court not engage in piecemeal appeals, regarding specific items or categories of property.  "The appropriate consideration is whether the trial court's disposition of these items resulted

in a property division, which, viewed in its entirety, was an abuse of discretion." *Briganti v. Briganti,* 9 Ohio St.3d 220, 222, 459 N.E.2d 896 (1984).

{¶37} Reviewing the two pages of Exhibit W, we find no abuse of discretion as to the division of the eleven pieces of marital property.

{¶38} Wife's third Assignment of Error is overruled.

### IV. DISCOVERY SANCTION

{¶39} On November 30, 2011, Husband filed a motion to compel discovery requests from Wife. He requested reasonable attorney fees in the amount of $500.00 or more. The trial court granted the motion on December 2, 2011 and held the amount of attorney fees would be determined at the final hearing. At the March 14, 2012 trial, Husband presented Exhibit S, which was an itemized billing statement from Husband's counsel.

{¶40} Wife argues in her fourth Assignment of Error that the trial court failed to hold a hearing on the award of sanctions. We disagree and find the matter was heard at the March 14, 2012 trial. Husband presented evidence as to his attorney fees and the magistrate considered the evidence to determine Husband was entitled to $1,000.000 in attorney fees as a discovery sanction. The discovery rules give the trial court great latitude in crafting sanctions to fit discovery abuses. *Burnem v. Burnem*, 5th Dist. Tuscarawas No. 2000AP020019, 2000 WL 1476110, *4 (Sept. 28, 2000). A reviewing court's responsibility is merely to review these rulings for an abuse of discretion. *Nakoff v. Fairview General Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996). Based on the evidence presented, we find no abuse of discretion.

{¶41} Wife's fourth Assignment of Error is overruled.

## V. DEBT CONSOLIDATION LOAN

{¶42} Wife contends in her fifth Assignment of Error that the trial court abused its discretion when it ordered that Wife was responsible for the debt consolidation loan. We disagree.

{¶43} R.C. 3105.171(B) requires the trial court to determine what constitutes marital property and what constitutes separate property. "In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses * * *." R.C. 3105.171(B). The Revised Code further requires that a trial court divide the marital property equally unless an equal division would be inequitable, in which case "the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(C)(1). The court may make a distributive award to facilitate, effectuate, or supplement a division of marital property. R.C. 3105.171(E)(1).

{¶44} Trial courts have "broad discretion to determine what property division is equitable in a divorce proceeding." *Cherry v. Cherry,* 66 Ohio St.2d 348, 421, 421 N.E.2d 1293 (1981), paragraph two of the syllabus. A trial court's decision allocating marital property and debt will not be reversed absent an abuse of discretion. "Abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶45} The debt consolidation loan originated in 2010 in the amount of $56,320.00, including service fee. At trial, Husband testified the debt consolidation loan was to consolidate credit card debt. He stated the credit cards were in his name, but

the balances were due to Wife's spending. Husband did not know what the credit card charges were for. The monthly payment on the loan was approximately $600.00. Since the parties' separation, Husband and Wife have each been paying one-half of the loan payment. There was no testimony as to the balance of the debt consolidation loan in 2012 or if the parties have missed payments or made additional payments.

{¶46} The trial court reviewed the parties' other marital debt. Wife testified she had a student loan in the amount of $55,000.00, a credit card in the amount of $4,000.00, and a car loan in the amount of $3,000.00. Husband was residing in the marital home in Kimball, Michigan. The first mortgage on the property was $132,572.25 and the second mortgage on the property was $1,036.99.

{¶47} The magistrate recommended Wife be responsible for her student loan, credit card, car loan, and debt consolidation loan. Husband was awarded the marital home in Michigan and the mortgage debt associated with the home.

{¶48} Wife's argument on appeal is the debt consolidation loan was marital debt and should be divided equally between the parties. The trial court examined the parties' total marital and separate debt. While no testimony was presented as to the current balance of the debt consolidation loan, it is logical the loan balance is less than the original balance in 2010. The trial court made an equitable division of the marital debt based on the evidence presented. We find no abuse of discretion.

{¶49} Wife's fifth Assignment of Error is overruled.

## VI. SHARED PARENTING PLAN

{¶50} The trial court adopted, with modifications, the shared parenting plan submitted by Husband.  The shared parenting plan named Husband as the primary residential parent and legal custodian to the minor children, D.J. and P.J., and Wife as primary residential parent and legal custodian to K.J.  Wife did not submit a proposed shared parenting plan.  Wife argues the trial court abused its discretion in adopting Husband's shared parenting plan because the evidence showed it would not be in the best interests of the minor children.

{¶51} R.C. 3109.04 governs allocation of parental rights and responsibilities and shared parenting:

(A) In any divorce, legal separation, or annulment proceeding and in any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child, upon hearing the testimony of either or both parents and considering any mediation report filed pursuant to section 3109.052 of the Revised Code and in accordance with sections 3127.01 to 3127.53 of the Revised Code, the court shall allocate the parental rights and responsibilities for the care of the minor children of the marriage. Subject to division (D)(2) of this section, the court may allocate the parental rights and responsibilities for the care of the children in either of the following ways:

* * *

(2) If at least one parent files a pleading or motion in accordance with division (G) of this section and a plan for shared parenting pursuant to that

division and if a plan for shared parenting is in the best interest of the children and is approved by the court in accordance with division (D)(1) of this section, the court may allocate the parental rights and responsibilities for the care of the children to both parents and issue a shared parenting order requiring the parents to share all or some of the aspects of the physical and legal care of the children in accordance with the approved plan for shared parenting. If the court issues a shared parenting order under this division and it is necessary for the purpose of receiving public assistance, the court shall designate which one of the parents' residences is to serve as the child's home. The child support obligations of the parents under a shared parenting order issued under this division shall be determined in accordance with Chapters 3119., 3121., 3123., and 3125. of the Revised Code.

* * *

(G) Either parent or both parents of any children may file a pleading or motion with the court requesting the court to grant both parents shared parental rights and responsibilities for the care of the children in a proceeding held pursuant to division (A) of this section. If a pleading or motion requesting shared parenting is filed, the parent or parents filing the pleading or motion also shall file with the court a plan for the exercise of shared parenting by both parents. If each parent files a pleading or motion requesting shared parenting but only one parent files a plan or if only one parent files a pleading or motion requesting shared parenting and also

files a plan, the other parent as ordered by the court shall file with the court a plan for the exercise of shared parenting by both parents. The plan for shared parenting shall be filed with the petition for dissolution of marriage, if the question of parental rights and responsibilities for the care of the children arises out of an action for dissolution of marriage, or, in other cases, at a time at least thirty days prior to the hearing on the issue of the parental rights and responsibilities for the care of the children. A plan for shared parenting shall include provisions covering all factors that are relevant to the care of the children, including, but not limited to, provisions covering factors such as physical living arrangements, child support obligations, provision for the children's medical and dental care, school placement, and the parent with which the children will be physically located during legal holidays, school holidays, and other days of special importance.

{¶52} R.C. 3109.04(F)(1) as the statute setting forth the factors a court must consider when determining the best interest of the child when it allocates parental rights and responsibilities.

(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually

oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

(2) In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

{¶53} In determining the parental rights and responsibilities, the magistrate examined the evidence presented at trial through witness testimony and the parties' credibility.

{¶54} The family is originally from Michigan but moved to Ohio for Wife's employment. The parties' extended family resides in Michigan. There is no family residing in Ohio. Before moving to Ohio, the children resided with Husband from May to August 2009. Wife visited family in Michigan for a weekend after Husband moved back to Michigan, but did not allow Husband to see P.J. and D.J.

{¶55} A teacher testified at trial that P.J. is a good student and did not believe P.J. would have trouble adjusting to a new school.

{¶56} Wife did not have concerns about Husband's parenting skills. She expressed concern about Husband's temper. She stated in the past he punched a wall in anger. Husband admitted that during the marriage, he punched the wall or a punching bag in anger. The magistrate found this to be an isolated incident and did not reflect on Husband's parenting skills.

{¶57} The parties communicate through the eldest daughter. The daughter testified she has heard Wife say negative statements about Husband in front of the minor children. The eldest daughter is married and she and her husband live with Husband in Michigan.

{¶58} Wife is in a romantic relationship. The magistrate found Wife to be less credible as to when the relationship began and how the relationship affects her time with her children.

{¶59} The magistrate conducted an in camera interview with the minor children. The children expressed their desire to live with their mother.

{¶60} The magistrate concluded, based on the testimony of the parties, it was in the best interests of the children to reside with Husband. It is well settled the finder of fact is in the best position to determine the credibility of the witnesses. Based on the record before us, we cannot say the trial court abused its discretion in adopting the magistrate's recommendation that Husband's shared parenting plan be adopted.

{¶61} Wife's sixth Assignment of Error is overruled.

## CONCLUSION

{¶62} The six Assignments of Error of Plaintiff-Appellant Heather Jones are overruled.

{¶63} The judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By: Delaney, J.,

Wise, P.J. and

Baldwin, J., concur.

 

HON. PATRICIA A. DELANEY

 

HON. JOHN W. WISE

 

HON. CRAIG R. BALDWIN